BOROUGH OF KENILWORTH, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, APPELLANT, v. FREDERICK M. RAUBINGER, STATE COMMISSIONER OF EDUCATION OF THE STATE OF NEW JERSEY, AND THE BOARD OF EDUCATION OF THE UNION COUNTY REGIONAL HIGH SCHOOL, DISTRICT NO. 1 (DOCKET NO. A-172-53) AND BOARD OF LOCAL GOVERNMENT, AND THE UNION COUNTY REGIONAL HIGH SCHOOL, DISTRICT NO. 1 (DOCKET NO. A-218-53), RESPONDENTS.

Argued May 17, 1954—Decided June 7, 1954.

582

*Mr. Earl Pollack* argued the cause for appellant.

*Mr. Thomas P. Cook* argued the cause for respondent, State Commissioner of Education (*Mr. Grover C. Richman,* Attorney-General of New Jersey, attorney).

*Mr. John F. Ryan* argued the cause for respondent board of education (*Mr. Bernard Steiner,* attorney).

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J. The Borough of Kenilworth seeks a determination nullifying the high school expansion program of the respondent Board of Education of the Union County Regional High School, District No. 1. The program proposes a $1,950,000 bond issue to finance the acquisition of sites for new high schools in Berkeley Heights and Clark Township and the immediate construction of a high school on the Clark Township site.

This regional district is comprised of the municipalities of Garwood, Kenilworth, Mountainside, Springfield, Clark and Berkeley Heights. It is roughly triangular in shape, with Springfield (abutted at its southeast corner by Kenilworth) at the northerly apex, and Berkeley Heights and Clark Township, respectively, at the extreme southwest and southeast base angles. The district at present has but one high school, which is located in Springfield.

In 1953 the regional board made a comprehensive survey of the future needs of the district for new high school facilities in light of growth and population trends, and upon the basis of that study concluded that a second high school will be needed prior to September 1956, and a third by 1959-

1960. This required the framing of a proposal by the regional board, *R. S.* 18:7–86, to be submitted to the voters at a referendum election, *R. S.* 18:7–85, and, because there were existing debt limitations, it was necessary that prior to the referendum election the proposal be consented to by the State Commissioner of Education and the Board of Local Government, *R. S.* 18:5–86(*a*) (3).

On October 6, 1953 the regional board framed a proposal: (a) to acquire as sites for school houses, and to expend for said purpose not exceeding $125,000, a plot of 42 acres in Berkeley Heights and a plot of 25 acres in Clark Township, (b) to construct a new high school on the Clark Township site at a cost not exceeding $1,825,000, and (c) to issue bonds for both purposes in the aggregate amount of $1,950,000.

Application for consents of the State Commissioner of Education and the Local Government Board were duly made on October 20, 1953. A hearing by the State Commissioner of Education was held, upon notice, on October 21, 1953, and on October 29 the Commissioner endorsed his consent to the proposal. A hearing was also held by the Local Government Board, after which that body on November 16, 1953 adopted a resolution endorsing its consent to the proposal. The proposal was approved by a vote of 3,360 to 570 at a referendum election held on November 30. The submission at the referendum election was for the approval or rejection of the proposal in its entirety. The vote in Kenilworth was 297 opposed to 53 in favor, the only adverse vote among the six communities.

Following the referendum election the Borough of Kenilworth on December 14 and December 29, 1953 filed notices of appeal from the actions respectively of the State Commissioner of Education and the Local Government Board. On January 18, 1954 the borough filed a complaint in lieu of prerogative writ against the regional board to have the election set aside and the bond issue declared invalid. The two appeals and the proceeding in lieu of prerogative writ were consolidated and have been certified here of our own motion.

Appellant's first point is that, because the proposal as it relates to Berkeley Heights provides for the acquisition of a school site only and not also for the building of a high school thereon, it is invalid.

■ ■ The argument is that a proposal to purchase land unaccompanied by a proposal to build school buildings thereon is not a proposal to finance "new educational facilities" within the meaning of *R. S.* 18:5–86 under which consent of the State Commissioner of Education may be given only if he is satisfied, among other things, "that the *new educational facilities* to be financed pursuant to said proposal or ordinance will within ten years be fully utilized." It is said that a site without a school is not an educational facility within the meaning of the statute. The short answer to the argument is that *R. S.* 18:5–86 is to be read with *R. S.* 18:7–85 which expressly authorizes the submission to the voters of a proposal including "any or all of the following purposes: a. Purchasing or taking and condemning land for school purposes or improving such land." Thus, "new educational facilities" embraces sites for school purposes. This conclusion is buttressed by reference to other statutes *in pari materia, R. S.* 18:7–91, prescribing time limits upon the maturity of bonds, which expressly embraces, in subsection (b), bonds "For acquiring land for school purposes;" and *R. S.* 18:8–16, concerning meetings of a regional board of education, which speaks of meetings "for bonding the district for the purchase of land * * * for school purposes."

■ It is next argued that the State Commissioner of Education could not legally discharge his statutory function under *R. S.* 18:5–86 to "record in writing his estimates * * * that the new educational facilities * * * will within ten years be fully utilized" if the proposal does not provide for the building of a school upon the site within ten years. The key word in this provision is "estimates." Plainly the Legislature did not contemplate that the proposal incorporate a

guarantee that new school buildings would be constructed within ten years. All that is contemplated is that there be sufficient evidence from which the Commissioner may reasonably "record in writing his estimates" that the "new educational facilities," in this case the Berkeley Heights site, will within ten years be fully utilized for school purposes. It is clear from the record that there was ample material before the Commissioner to support his conclusion. At the hearing before him evidence was adduced which plainly indicated that the present high school facilities in the district will be taxed to capacity by September 1956, that the high school student population will steadily increase, that even the proposed new Clark Township school, with the present Springfield school, will provide adequate facilities only until 1960, and that for that reason construction on the Berkeley Heights site in or about that year is contemplated by the regional board. There was also uncontradicted evidence that not only is the Berkeley Heights site an integral part of the comprehensive regional plan but also that it can be acquired at this time upon very favorable terms and that the opportunity to do so should not be lost.

The duty of the State Commissioner under the statute is to examine into the regional board's plans for use of the proposed facilities, such as they may be, and to be satisfied that the facilities will be fully utilized within the ten year period. All that the statute requires is that the Commissioner's estimate be based upon adequate evidence, and the wealth of data before the Commissioner in this case fully supported his conclusion. The same may also be said of the requirement of *R. S.* 18:5–86(*c*), that he be satisfied "that under existing statutes there is no alternative method of providing such new educational facilities which would be more economical."

■ Appellant next argues that the land areas involved, 25 acres in Clark Township and 42 acres in Berkeley Heights, are excessive. The borough cites the "Guide for Schoolhouse Planning and Construction" adopted in March

1952 by the State Board of Education which, in dealing with "recommended minimum sizes" of school sites, comments: "For high schools * * * a minimum of ten acres is recommended plus one acre for every hundred pupils enrolled." We find nothing in this to suggest that the regional board improperly exercised its discretion or that the State Commissioner did so in not disapproving the proposal because the areas exceed this minimum. The standard recommended by the Guide is a minimum standard. No maximum is suggested, rather, the Guide expressly states: "The desirable size of a school site should be determined by the nature and scope of the contemplated education program." We find no evidence upon which to base a conclusion that either area proposed to be acquired is excessive for the contemplated high schools. There was, therefore, no occasion for either the Commissioner or the Local Government Board to exercise the power under *R. S.* 18 :5–86(*b*) to "require the board of education * * * to adopt resolutions restricting or limiting any future proceedings therein or other matters or things deemed by the commissioner or board to affect any estimate made or to be made."

■ Appellant next attacks the consent of the Local Government Board. The standards for that board's action prescribed by *R. S.* 18 :5–86(*d*), include, among other things, a requirement that the board be satisfied "that, taking into consideration trends in population and in values and uses of property and in needs for educational facilities, the net school debt of such school district will at some date within fifteen years be less, * * * in the case of a regional school district, than four per centum (4%), * * * of the average assessed valuation of property in such school district as stated in supplemental debt statements, which might be filed on such date." The auditors for the regional board offered evidence that the net school debt would come within the four per centum limitation in the fifteenth year. The Board of Local Government acted upon that evidence in endorsing its consent to the proposal. The action is challenged because

the auditors' figures did not take into consideration the cost of any high school to be constructed at Berkeley Heights in or about 1960. We have already pointed out that the proposal is not invalid merely because it includes no provision for the building of the high school at Berkeley Heights, and that for the purposes of the statute the site itself falls within the term "educational facilities." Plainly the statute contemplates that the determination of the Local Government Board shall be in respect of the proposed bond issue then before it. If in 1960 additional bonds must be issued to finance the Berkeley Heights school construction, the Local Board will at that time have to determine whether the district has sufficient ability to pay to bring its debt—the then outstanding bonds plus the new issue—within its four per centum limit during the 15-year period thereafter. Any other interpretation of the statute would render it utterly unworkable. Many factors enter into the ability of a bond obligor to meet its bond obligations, and those factors change with the passing of time. For example, there was evidence below that the tax ratables in the district upon which the four per centum is computed have been increasing annually as the region has prospered and grown. What the situation will be when financing of the construction of the high school at Berkeley Heights is required must await the event.

Appellant next attacks the proposal as a "package deal" submitted to the voters for approval or rejection in its entirety, without opportunity to vote upon the Berkeley Heights and Clark Township projects as separate proposals. To that the answer is that *R. S.* 18:7–86 expressly provides:

"* * * If bonds for more than one purpose are proposed, separate proposals for each may be submitted or *several purposes may be submitted in one proposal* which shall state such purposes and either the total amount of bonds to be authorized therefor, or the amount of bonds to be authorized for each purpose." (Emphasis supplied.)

Moreover, there was ample showing here that the proposal is an integrated whole, carefully developed by the regional

board as best designed to meet the future high school needs of the district. The separation of the projects and the rejection of either might well have resulted in frustration of the whole. There is in these circumstances nothing to suggest an unreasonable exercise of the board's statutory power.

Appellant's last point is addressed to a brochure which was printed and distributed, at public expense, to the voters before the referendum election. The contention is made that this was an impropriety within the principles laid down in this court's decision in *Citizens, etc., Public Funds v. Board of Education, etc., Parsippany-Troy Hills*, 13 *N. J.* 172 (1953), for which the result of the election should be invalidated. But, even if there was impropriety, it would not be a reason for invalidating the election. Relief within the principles of the *Parsippany-Troy Hills* decision should be sought prior to the election. Such relief, by way of *ad interim* restraint against distribution of the brochure, was sought in an action brought by the borough before the election, but was denied. No appeal from that denial was taken, nor does it appear that the action was in anywise pressed thereafter.

The determinations embodied in the endorsement certificates of the State Commissioner of Education and the Board of Local Government, dated October 29, 1953 and November 16, 1953, are affirmed. The cause is remanded to the Law Division, with direction to enter judgment in favor of the defendant Board of Education of the Union County Regional High School, District No. 1, and against the plaintiff Borough of Kenilworth in the proceeding in lieu of prerogative writ.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.